## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JUDY FAHRNER**, **individually,**
**and on behalf of the class she represents,**

**and**

**DANIEL FAHRNER, individually, and**
**on behalf of the class he represents,**

**Plaintiffs,**

**v.**                                                          **No. 13-0227-DRH**

**TILTWARE LLC; RATIONAL FT ENTERPRISES**
**LIMITED, HOWARD LEDERER, JENNIFER**
**HARMON-TRANIELLO, ERIK SEIDEL, and**
**UNKNOWN DEFENDANTS,**

**Defendants.**

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

## Introduction and Background

Pending before the Court are defendant Rational FT Enterprises Limited's motion to dismiss third amended complaint (Doc. 165) and defendants Titlware LLC, Howard Lederer, Erik Seidel and Jennifer Harmon-Traniello's motion to dismiss the third amend complaint (Doc. 169).   Plaintiffs oppose the motions (Docs. 181 & 182).   Based on the following, the Court **GRANTS** the motion.

On January 25, 2013, Judy Fahrner, individually and on behalf of all others similarly situated, filed a first amended complaint against Raymond Bitar, Nelson Burtnick, Full Tilt Poker Ltd., Titlware LLC, Vantage, Ltd., FILCO, Ltd., KOLYMA

Corp. A.V.V., Pocket Kings Ltd., Pocket Kings Consulting Ltd., Ranston Ltd., Mail Media Ltd., Howard Lederer, Philip Ivey Jr., Christopher Ferguson, Johnson Juanda, Jennifer Harmon-Traniello, Phillip Gordon, Erick Lindgren, Erik Seidel, Andrew Bloch, Mike Matusow, Gus Hansen, Allen Cunningham, Patrik Antonius, Rafael Furst, and Rational FT Enterprises Limited in the St. Clair County, Illinois Circuit Court (Doc. 2-1).    Plaintiff alleged that defendants knowingly and intentionally accepted gambling losses through an illegal gambling enterprise known as "Full Tilt" in violation of the Illinois Loss Recovery Act,    720 ILCS 5/28-8 ("LRA"). [1]  Fahrner's first amended complaint contained twenty six counts for violations of 720 ILCS 5/28-1 and 720 ILCS 5/28-8 against each of the named defendants.    That complaint purported to be a class action for "hundreds of thousands – possibly millions of Illinois poker players who lost money to Full Tilt and whose close relatives are entitled to tripled recovery of said losses in accordance with 720 ILCS 5/28-8." (Doc. 2-1, p.11).

On March 7, 2013, defendants Tiltware LLC ("Tiltware") and Seidel removed the case to this Court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d) (Doc. 2). [2]   Thereafter, on January 9, 2014, plaintiff Judy Fahrner filed a second amend complaint against Allen Cunningham, Jennifer

---

[1] The Full Tilt group of companies consists of the corporate named defendants among others.

[2] On April 14, 2011, a civil forfeiture complaint was instituted against PokerStars and Full Tilt in the Southern District of New York, *United States v. PokerStars, et al.,*11-cv-02564-KMW (S.D.N.Y.) (Doc. 8).   The forfeiture sought $1.5 billion, which allegedly represented the total amount of revenue processed through the gambling website.   The total of PokerStars' settlement was $731 million.   $547 million was actually forfeited and $184 million was paid directly to the non-U.S. players of Full Tilt Poker, whose assets PokerStars purchased directly from the government.   The Fahrners did not file claims in that civil forfeiture action.

Harmon-Traniello, Howard Lederer, Mike Matusow, Rational FT Enterprises ("Rational FT"), Seidel and Tiltware (Doc. 124).[3] Meanwhile in a companion case, *Sonnenberg v. Oldford*, 13-cv-0344-DRH, the undersigned judge granted in part and denied in part a motion to dismiss based on almost identical allegations and the same statute as this case.   *See Sonnenberg v. Oldford*, 13-cv-0344-DRH; Doc. 68.[4]  Based on the Court's decision in *Sonnenberg*, Fahrner filed a motion for leave to file a third amended complaint to which the defendants opposed.   On June 19, 2014, the Court allowed plaintiff leave to file an amended complaint (Doc. 162).

On June 20, 2014, plaintiffs filed a third amended class action complaint adding Daniel Fahrner as a named plaintiff (Doc. 163).[5] The third amended complaint is "an action to recover money lost by the residents of the State of Illinois to the online poker business commonly known as Full Tilt Poker."   *Id* at ¶ 1.[6] The third amended class action complaint contains thirty-two counts: Count 1 against Rational FT, Count V against Titlware, Count IX against Lederer, Count XIII

3 On December 27, 2103, Magistrate Judge Williams granted plaintiff's motion for leave to file an amended complaint (Doc. 122).
4 The Court in *Sonnenberg* allowed plaintiff leave to file an amended complaint to allege "winners" and "losers" sufficiently under the LRA.   *See Sonnenberg*; Doc. 68.
5 The Court notes that the third amended class action complaint violates that Local Rules.   Local Rule 15.1 provides in part: "All new material in an amended pleading must be underlined.   It is sufficient to simply underline the names of new parties the first place they appear in the amended pleadings.   Similarly, when new claims or defenses are raised by an amendment, it is sufficient that the number of the designated count or paragraph identifying the amendment be underlined."   That was not done here. Further, the Court notes that the third amended complaint omits allegations regarding the underlying civil forfeiture proceedings in the Southern District of New York and the underlying criminal proceeding related to the allegations of this case.
6 On August 13, 2014, the Court dismissed without prejudice defendants Allen Cunningham and Mike Matusow (Doc. 184).

against Jennifer Harmon-Traniello, Count XVII against Erik Seidel, Count XXI against Mike Matusow, Count XXV against Allen Cunningham and Count XXIX against unknown defendants are brought by Judy Fahrner as "any person," individually and on behalf of Illinois residents, that lost money with Full Tilt pursuant to the LRA, 720 ILCS 5/28-8 and the remaining Counts: Count II against Rational FT, Count III against Rational FT, Count IV against Rational FT, VI against Tiltware, VII against Titlware, VIII against Titlware, X against Howard Lederer, XI against Howard Lederer, Count XII against Howard Lederer, Count XIV against Jennifer Harmon-Traniello, Count XV against Jennifer Harmon-Traniello, Count XVI against Jennifer Harmon-Traniello,   Count XVIII against Erik Seidel, Count XIX against Erik Seidel, Count XX against Erik Seidel, Count XXIII against Mike Matusow, Count XXIV against Mike Matusow, Count XXVI against Allen Cunningham, Count XXVII against Allen Cunningham, Count XXVIII against Allen Cunningham, Count XXX against unknown defendants, Count XXXI against unknown defendants and Count XXXII against unknown defendants brought by Daniel Fahrner as a "loser," individually and on behalf of Illinois residents, that gambled and lost money on Full Tilt Poker pursuant to 720 ILCS 5/28-1, 28-3, and 28-7.[7]   Judy Fahrner seeks to represent the following class:

> Those individuals who lost an amount of $50.00 or more on Full Tilt, excluding those individuals who have previously brought an action against any Defendant to recover their losses under the Illinois Loss Recovery Act, 720 ILCS 5/28-8.  The measure of damages for this

---

[7] Judy Fahner is the mother of Daniel Fahrner.   Both are adult residents of St. Clair County, Illinois.

class is all money lost by Illinois gamblers on Full Tilt.

(Doc. 163; pg. 14, ¶ 47).   Daniel Fahrner seeks to represent a very similar class:

> Those individuals who lost an amount of $50.00 or more on Full Tilt, excluding individuals who have previously brought an action against any Defendant to recover their losses.   The measure of damages for this class is also all money lost by Illinois gamblers on Full Tilt.

(Doc. 163; pg. 15, ¶ 55).

The specific allegations as to defendants Rational RF, Titlware, Lederer, Harmon-Traniello and Seidel are contained in paragraphs 5 through 16 of the third amended complaint.   Plaintiffs allege that Rational FT "is a business entity organized in and operating under the laws of the Isle of Man.   Rational FT is licensed by the Isle of Man Gaming Authority to operate online poker rooms and accept gambling losses."   (Doc. 163; pg. 3, ¶ 7).   Plaintiffs allege that Tiltware "is a business entity headquartered and organized under the laws of the state of California.   At all times relevant herein, Tiltware participated in and or/directed the illegal acts of other defendants." (Doc. 163; pg. 3, ¶ 8).   As to defendant Lederer, plaintiffs allege that he "is an individual residing in the state of Nevada and a member of Full Tilt Enterprise.   At all times relevant herein, Lederer was a shareholder, owner, president, director, and/or participant in Full Tilt and/or one or more Full Tilt Companies.   Lederer, a professional poker player, himself, was a member of Team Full Tilt. … Besides his involvement with the business, upon information and belief, Lederer played poker against Illinois residents online through Full Tilt Poker and won money from them in violation of Illinois law."

(Doc. 163; pg. 3, ¶ 9).   As to Harmon-Traniello, plaintiffs similarly allege that she "is an individual residing in the State of Nevada and is a member of Full Tilt Enterprise.   At all times relevant herein, Harman was a shareholder, owner, director, and/or participant in Full Tilt and/or one or more Full Tilt Companies. Harman, a professional poker player herself, was a member of Team Full Tilt. … Besides her involvement with the business, upon information and belief, Harman played poker against Illinois residents online through Full Tilt Poker and won money from them in violation of Illinois law." (Doc.   163; pgs. 3-4, ¶ 10).[8] Likewise to defendant Seidel, plaintiffs allege that he "is an individual residing in the State of Nevada and is a member of Full Tilt Enterprise.   At all times relevant herein, Seidel was a shareholder, owner, director, and/or participant in Full Tilt and/or one or more Full Tilt Companies.   Seidel, a professional poker player himself, was a member of Team Full Tilt. … Besides his involvement with the business, upon information and belief, Seidel played poker against Illinois residents online through Full Tilt Poker and won money from them in violation of Illinois law." (Doc. 163; pg. 4, ¶ 11).   Further, plaintiffs allege:

> 14. "… Rational RF, Titlware, the individuals named herein, and certain other unknown entities and individuals (the "**Unknown Full Tilt Defendants**") acted in concert in a joint venture to facilitate, host, operate, and profit from an online poker business commonly known as Full Tilt. 15. Upon information and belief, defendants Rational RF, Tiltware, the individuals named herein, and the Unknown Full Tilt Defendants established a series of shell companies to conceal their

---

8 The Court notes that the third amended complaint contains two different spellings for defendant Harmon: "Harmon" and "Harman."   As defendants utilize the spelling "Harmon" for defendant Harmon, the Court does too.

identity and avoid their legal responsibilities.   11. The Defendants are shams and alter egos of one another and their individual owners."

(Doc. 163; pg. 5, ¶¶ 14-16).

## Analysis

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008)(quoting *EEOC v. Concentra Health Svcs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007)). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *E.E.O.C. v. Concentra Health Services, Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).

Second, to survive a motion to dismiss, the court determines whether the well-pleaded allegations, if true, "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Iqbal* 556 U.S. at 679; *Concentra,* 496 F.3d at 776. A claim has facial plausibility when the pleaded factual content allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See Iqbal,* 556 U.S. at 678. "The plausibility standard ... asks for more than a sheer possibility that a defendant acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."

*Iqbal,* 556 U.S. at 678 (internal quotation marks omitted). "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010). Rather, *Twombly* and *Iqbal* require "the plaintiff to 'provide some specific facts' to support the legal claims asserted in the complaint." *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)). Though the "degree of specificity required is not easily quantified, ... 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (quoting *Swanson,* 614 F.3d at 404). If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Concentra,* 496 F.3d at 776. Accordingly, a motion to dismiss may be properly granted where the plaintiff does not allege a plausible entitlement to relief either by (1) failing to provide the defendant with notice of plausible claims against it or (2) asserting only speculative or conclusory allegations in the complaint.

The "Loss Recovery Act should not be interpreted to yield an unjust or absurd result contrary to its purpose." *Vinson v. Casino Queen, Inc.*, 123 F.3d 655, 657 (7th Cir. 1997) (citations omitted). "The Loss Recovery Act was intended to deter illegal gambling by using its recovery provisions as a powerful enforcement mechanism." *Id.* Illinois statutes like the Loss Recovery Act (LRA) are "penal in their nature," *Robson v. Doyle*, 61 N.E. 435, 437 (Ill. 1901), and "must be strictly construed." *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th

Cir. 2013); *see also Reuter v. MasterCard Int'l, Inc.*, 921 N.E.2d 1205, 1211 (Ill. App. 2010)(noting that an Illinois Circuit Court "explained that the [Loss Recovery Act] is penal in nature and must therefore be strictly construed.").

To inform the reader, the Court sets out the relevant sections of the statute contained in the third amended complaint.   Section 720 ILCS 5/28-1states in part:

Gambling.

(a) A person commits gambling when he or she:

> (1) knowingly plays a game of chance or skill for money or other thing of value, unless excepted in subsection (b) of this Section;

> (2) knowingly makes a wager upon the result of any game, contest, or any political nomination, appointment or election;

> (3) knowingly operates, keeps, owns, uses, purchases, exhibits, rents, sells, bargains for the sale or lease of, manufactures or distributes any gambling device;

> (4) contracts to have or give himself or herself or another the option to buy or sell, or contracts to buy or sell, at a future time, any grain or other commodity whatsoever, or any stock or security of any company, where it is at the time of making such contract intended by both parties thereto that the contract to buy or sell, or the option, whenever exercised, or the contract resulting therefrom, shall be settled, not by the receipt or delivery of such property, but by the payment only of differences in prices thereof; however, the issuance, purchase, sale, exercise, endorsement or guarantee, by or through a person registered with the Secretary of State pursuant to Section 8 of the Illinois Securities Law of 1953,  or by or through a person exempt from such registration under said Section 8, of a put, call, or other option to buy or sell securities which have been registered with the Secretary of State or which are exempt from such registration under Section 3 of the Illinois Securities Law of 1953    is not gambling within the meaning of this paragraph (4);

> (5) knowingly owns or possesses any book, instrument or apparatus by means of which bets or wagers have been, or are, recorded or

registered, or knowingly possesses any money which he has received in the course of a bet or wager;

(6) knowingly sells pools upon the result of any game or contest of skill or chance, political nomination, appointment or election;

(7) knowingly sets up or promotes any lottery or sells, offers to sell or transfers any ticket or share for any lottery;

(8) knowingly sets up or promotes any policy game or sells, offers to sell or knowingly possesses or transfers any policy ticket, slip, record, document or other similar device;

(9) knowingly drafts, prints or publishes any lottery ticket or share, or any policy ticket, slip, record, document or similar device, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state or foreign government;

(10) knowingly advertises any lottery or policy game, except for such activity related to lotteries, bingo games and raffles authorized by and conducted in accordance with the laws of Illinois or any other state;

(11) knowingly transmits information as to wagers, betting odds, or changes in betting odds by telephone, telegraph, radio, semaphore or similar means; or knowingly installs or maintains equipment for the transmission or receipt of such information; except that nothing in this subdivision (11) prohibits transmission or receipt of such information for use in news reporting of sporting events or contests; or

(12) knowingly establishes, maintains, or operates an Internet site that permits a person to play a game of chance or skill for money or other thing of value by means of the Internet or to make a wager upon the result of any game, contest, political nomination, appointment, or election by means of the Internet. This item (12) does not apply to activities referenced in items (6) and (6.1) of subsection (b) of this Section.

…

(c) Sentence.

Gambling is a Class A misdemeanor. A second or subsequent conviction under subsections (a)(3) through (a)(12), is a Class 4 felony.

(d) Circumstantial evidence.

In prosecutions under this Section circumstantial evidence shall have the same validity and weight as in any criminal prosecution.

Section 720 ILCS 5/28-3 reads:

Keeping a Gambling Place.

A "gambling place" is any real estate, vehicle, boat or any other property whatsoever used for the purposes of gambling other than gambling conducted in the manner authorized by the Riverboat Gambling Act or the Video Gaming Act. Any person who knowingly permits any premises or property owned or occupied by him or under his control to be used as a gambling place commits a Class A misdemeanor. Each subsequent offense is a Class 4 felony. When any premises is determined by the circuit court to be a gambling place:

(a) Such premises is a public nuisance and may be proceeded against as such, and

(b) All licenses, permits or certificates issued by the State of Illinois or any subdivision or public agency thereof authorizing the serving of food or liquor on such premises shall be void; and no license, permit or certificate so cancelled shall be reissued for such premises for a period of 60 days thereafter; nor shall any person convicted of keeping a gambling place be reissued such license for one year from his conviction and, after a second conviction of keeping a gambling place, any such person shall not be reissued such license, and

(c) Such premises of any person who knowingly permits thereon a violation of any Section of this Article shall be held liable for, and may be sold to pay any unsatisfied judgment that may be recovered and any unsatisfied fine that may be levied under any Section of this Article.

Section 720 ILCS 5/28-7 states:

Gambling contracts void.

(a) All promises, notes, bills, bonds, covenants, contracts, agreements, judgments, mortgages, or other securities or conveyances made, given, granted, drawn, or entered into, or executed by any person whatsoever,

where the whole or any part of the consideration thereof is for any money or thing of value, won or obtained in violation of any Section of this Article are null and void.

(b) Any obligation void under this Section may be set aside and vacated by any court of competent jurisdiction, upon a complaint filed for that purpose, by the person so granting, giving, entering into, or executing the same, or by his executors or administrators, or by any creditor, heir, legatee, purchaser or other person interested therein; or if a judgment, the same may be set aside on motion of any person stated above, on due notice thereof given.

(c) No assignment of any obligation void under this Section may in any manner affect the defense of the person giving, granting, drawing, entering into or executing such obligation, or the remedies of any person interested therein.

(d) This Section shall not prevent a licensed owner of a riverboat gambling operation from instituting a cause of action to collect any amount due and owing under an extension of credit to a riverboat gambling patron as authorized under the Riverboat Gambling Act.

Further, 720 ILCS 5/28-8(a) provides:

Any person who by gambling shall lose to any other person, any sum of money or thing of value, amounting to the sum of $50 or more and shall pay or deliver the same or any part thereof, may sue for and recover the money or other thing of value, so lost and paid or delivered, in a civil action against the winner thereof, with costs, in the circuit court.   No person who accepts from another person for transmission, and transmits, either his own name or the name of such other person, any order for any transaction to be made upon, or who executes any order given to him by another person, or who executes any transaction for his own account on, any regular board of trade or commercial, commodity exchange, shall, under any circumstances, be deemed a "winner" of any moneys lost by such another person in or through any such transactions.

Lastly, 720 ILCS 5/28-8(b) provides:

If within 6 months, such person who under the terms of subsection 28-8(a) is entitled to initiate an action to recover his losses does not in fact pursue his remedy, any person may initiate a civil action against the winner.   The court or jury, as the case may be, shall determine the

amount of the loss.   After such determination, the court shall enter a judgment of triple the amount so determined.

Defendants raise several arguments in support of dismissal of the third amended complaint.   The Court turns to address the arguments raised.

First, defendants argue that plaintiffs fail to identify a loser or a loss. Specifically, defendants argue that other than identifying Daniel Fahrner as a purported loser, plaintiffs failed to identify a single cognizable loser or a loss in that the third amended complaint does not plead basic facts, including: when the purported loss was incurred, to whom (i.e. which player) the loss was sustained, and what is the amount of the loss in question. Plaintiffs counter that they have identified a loser and the losses in that Daniel Fahrner gambled and lost $50 or more on the website, and that these allegations are sufficient for the purposes of the third amended complaint and to withstand the motions to dismiss.   Plaintiffs further counter that they should be allowed discovery into defendants' player data. The Court agrees with defendants and finds that plaintiffs have failed to plead both loser and loss sufficiently.

Section 8(b) of the LRA plainly states that a non-loser plaintiff does not have a cause of action until the gambling loser has failed to bring suit within six months of the loss.   Plaintiffs cannot allege the six months have passed or that they timely brought the claim without alleging the date of a loss and the amount of the loss. Thus, plaintiffs must allege that a specific loser lost a certain amount of money on a certain date. Plaintiffs have failed to do that in their respective counts.   The Court

notes that plaintiffs' third amended complaint does not contain *one* date establishing the time frame as to when the conduct allegedly took place. Repeatedly throughout the third amended complaint, plaintiffs merely state "[a]t all times relevant herein" without stating specifically when the conduct causing the injury took place. In plaintiffs' responses to the motions to dismiss, Daniel Fahrner attaches an affidavit that states in part: "That beginning in 2004 and continuing until 2011, I maintained an account with Full Tilt Poker by and through the website www.fulltilt.com. That in said time frame I used my account to engage in online gaming, including but not limited to cash buy in poker games and tournament poker games. … That on multiple occasions in the time frame stated above, the "rake" taken during the cash buy in poker games was an amount equal to or exceeding fifty dollars ($50.00). That on multiple occasions in the time frame stated above, the entry fee collected during a tournament poker game was an amount equal to or exceeding fifty dollars ($50.00). That on multiple occasions in the time frame stated above, I lost a wager in an amount equal to or exceeding fifty dollars ($50.00) to unknown persons during a game of poker." (Doc. 181-2. pgs. 1-2 and Doc. 182-2, pgs. 1-2). Clearly, this affidavit is very general as to Daniel's losings and to the overall allegations in the third amended complaint. The Court finds the affidavit does not help plaintiffs; like the third amended complaint, the affidavit fails to state the elements to sustain a cause of action. The allegations of Daniel Fahrner's losses are devoid of detail, failing to allege the exact amounts he purportedly lost gambling, when he lost the sum, to whom he lost the sum, and

what type of game he was playing.   Thus, plaintiffs have failed to allege the "who,"
"what," and "when" to sustain a cause of action, individually and on behalf of
others, under the LRA.   "For § 8(b) reference to § 8(a) to have any substance, it
must be understood to place a condition in the clause in § 8(b) permitting "any
person [to] initiate a civil action against the winner" and to require non-loser
plaintiffs to allege the elements of § 8(a), i.e., who was the winner, who was the
loser, when the loss took place, and the amount of money lost."   *Langone v.
Kaiser*, 12-cv-02071; 2013 WL 5567587 *4 (N.D. Ill. 2013).   The failure to plead
the specific elements is fatal to plaintiffs' claims as the Court finds that allowing
plaintiffs to amend their allegations would be futile.

Next, defendants argue that defendants are not "winners" within the meaning
of the LRA.   Defendants argue that there are no allegations that they participated
in the games by placing bets or wagers, winning bets or wagers, or by risking any of
their own money.   Defendants contend that they are merely operators of an online
poker room, and not participants in the games they host and therefore are more
akin to a third party service provider.   Defendants argue that the third amended
complaint reinforces this conclusion through repeated allegations that the
defendants owned and operated an online poker website that hosted poker games.
Defendants also argue that the assertion that they derived profits from collecting
commissions in the form of "rake" or "take" is not probative of whether defendants
can be construed to be "winners."   Plaintiffs counter that they have adequately
alleged that defendants are winners in that the third amended complaint alleges

that defendants won money directly from Illinois gamblers in the form of a "rake" from the games.   Specifically, plaintiffs allege "[t]he Defendants, acting in concert, won money from Illinois gamblers by taking a percentage of the amount bet, won or lost as the "rake," "take out," or commission for hosting the games." (Doc. 163; pg. 11, ¶ 29).   The Court agrees with defendants and finds that the plaintiffs have not alleged winners sufficiently to withstand the motion to dismiss.

"It is the winner, not the keeper of the house, who is liable to respond to the loser, or if he does not sue within six months, to whoever may sue." *Ranney v. Flinn*, 60 Ill. App. 104 (Ill. App. 1894)(Plaintiff played cards in a room over the defendant's saloon.   The defendant received compensation for the use of the room in "chips" representing money, whenever a hand of a certain type was dealt, and only on rare occasions did the defendant play at the game with plaintiff, and there was no proof that at such time the plaintiff's losses amounted to $10 to defendant.). *See also Zellers v. White*, 70 N.E. 669, 671 (Ill. 1904)(defendant was an owner of a gambling establishment and a winner because he kept his agent's winnings; *Kruse v. Kennet et al.*, 181 Ill. 199 (Ill. 1899)(defendant brokerage firm which entered into contracts to bet on grain prices was a winner). A winner under the LRA is someone that has a direct stake in the outcome of the gambling.   *See Pearce v. Foote*, 113 Ill. 228 (Ill. 1885). (The Illinois Supreme Court held that the brokers were winners not because they collected commissions on gambling activity, but because the brokers *participated in the risk* of the trade or "wager." The brokers or their client could be "winners" or "losers" depending "on the happening of a certain [future]

event." *Id.* at 239. The gain or loss the client would earn from the trade was uncertain when the agreement with the broker was consummated, and "if there was a loss, [the client] was to pay it to [the brokers], and if there was a gain, [the brokers] were to pay it to [the client]." *Id.* at 237–38 (alterations added; internal quotation marks omitted). The brokers took a risk that the loss incurred on the trade might be so great that the client would not be able to cover it, or that the client's gain might be so great that the brokers would not be able to cover it. *See id.* at 236 (explaining that the client had paid the brokers only part of what he owed them)).   Here, the Court finds that plaintiffs have added self-serving conclusory allegations regarding defendants generally and specifically that defendants won money by taking "rake" in order to withstand dismissal.   The Court finds that these new allegations are boilerplate and insufficient to establish a winner.   Further, there are no allegations that any of the defendants won Daniel Fahrner's money.   Plaintiffs' third amended complaint fails to plead that defendants participated in the games by placing bets or wagers, won bets or wagers, or risked any of their own money.   In fact, plaintiffs offer contrary allegations stating that "other individuals won money from Illinois gamblers during poker games hosted by the Defendants." (Doc. 163; pg. 13, ¶ 43).   Again, based on the allegations in the third amended complaint, the Court finds that defendants were more akin to a third party service provider that provided a forum for others to play games and did not have a stake in how the games were decided/won.

Next, defendants argue that plaintiffs cannot bring private causes of action

pursuant to Sections 5/28-1 and 5/28-3.   Further, defendants argue that section 5/28-7 does not give plaintiff's a private cause of action; rather it simply declares gambling contracts null and void and of no legal effect.   Plaintiffs respond that implied private causes of actions are necessary to financially compensate the victims harmed by defendants' illegal activity.   The Court agrees with defendants' reasoning.

A court should give intention of the legislature when determining whether a statute creates a private cause of action; "all other rules of statutory construction are subordinate to this cardinal principle."   *Metzger v. DaRosa*, 805 N.E.2d 1165, 1167 (Ill. 2004).   The best way to determine the legislature's intent is to look at the statute.   The absence of an explicit grant of a private right does not mean that none exists, for Illinois courts, may, and often do, find private rights of action implied in Illinois statutes.   *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d. 1115, 1117 (Ill. 1999).   A private right is properly implied if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute. *Id.* at 1117-18; *Cowper v. Nyberg*, 10 N.E.2d 435, 354 (Ill. App. 2014).   When analyzing these factors, a court should consider the statute as a whole, and not in insolated provisions.   *Fisher*, 722 N.E.2d at 1119.   The Illinois Supreme Court directed courts to focus on the fourth factor and repeatedly held that a court should not find

a private right of action implied in a statute unless it would be ineffective without one.   *See e.g., Abbasi ex rel. Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 185-86 (Ill. 1999); *Fisher*, 722 N.E.2d at 1120.

Here, both sections 5/28-1 and 5/28-3 establish *criminal* penalties for gambling and provide that a conviction under each section is a Class 4 felony punishable as a misdemeanor.   *See* 720 ILCS 5/28-1 ("Gambling is a Class A Misdemeanor.   A second or subsequent conviction under subsections (a)(3) through (a)(12), is a class 4 felony."); 720 ILCS 5/28-3("Any person who knowingly permits any premise or property owned or occupied by him or under his control to be used as a gambling place commits a Class A misdemeanor.   Each subsequent offense is a Class 4 felony.")   While, section 5/28-7 declares gambling contracts null and void and of no legal effect and is intended to prevent the enforcement of obligations contained in certain types of gambling contracts.   None of these sections provide for civil remedies like section 5/28-8 provides.   It is undisputed that every claim in the third amended complaint seeks to recover the same purported gambling losses.   Examining the statute in its entirety, the Court finds that the private cause of action contained in section 5/28-8 is the only private cause of action that the legislature intended and that the statute is adequate and effective in providing remedies to plaintiffs and the public as a whole.   As *Metzger* demonstrates, the inquiry must not focus only on plaintiffs' specific claims, but on the effectiveness of the statute generally.   *See Metzger*, 805 N.E.2d at 1171*.* Clearly, plaintiffs have an adequate remedy for violations of the gambling statute.

A court should look to whether a plaintiff has an alternate remedy to pursue his claims when deciding whether an act creates a private right of action. *See, e.g. Corgan v. Muehling*, 574 N.E.2d 602, 610 (Ill. 1991). Had the legislature intended for further civil remedies it would have included those additional civil remedies in the statute as it did in section 5/28-8. *See Metzger*, 805 N.E.2d at 117 ("Where, as here, the legislature has expressly provided a private cause of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce other sections of the same statute.") Moreover, as previously stated, the statute is penal in nature. When a statute is prohibitory, regulatory, or penal in nature, a strict construction is appropriate. *See Sawyer Realty Group v. Jarvis Corp.*, 432 N.E.2d 849, 854 (Ill. 1982); *McKey & Poague, Inc. v. Stackler, 379* N.E2d 1198, 1203-04 (Ill. App. 1978). Thus, plaintiffs may not bring causes of action under sections 5/28-1, 5/28-3, and 5/28-7.

Lastly, the Court finds that plaintiffs' loser claims are barred by the relevant statute of limitations contained in the LRA. Plaintiffs did not address this argument in their opposition. As noted above, plaintiffs' third amended complaint is silent as to the specifics regarding the winners and the losers. Further, Daniel Fahrner admits in the third amended complaint that he did not sue within the 6-month time frame. (Doc. 163: pg. 17, ¶ 67; pg. 22, ¶ 101; pg. 27, ¶ 135; pg. 32, ¶ 169; pg. 37, ¶ 203; pg. 41, ¶ 237; pg. 46, ¶ 271; and pg. 51, ¶ 305 "Daniel Fahrner did not bring an action on his own behalf within six months of any loss to Full Tilt."). The LRA only contains *one* statute of limitations: a six month time frame

for the "loser" to bring a claim for recovery of the loss and after that time frame may a non-loser plaintiff bring a claim for the loss.    This language has been interpreted as imposing a 6-month statute of limitations on the "loser's" right to recover monies paid under 5/28-8(a).    *See Kizer v. Walden*, 198 Ill. 274 (Ill. 1902)(court held that gambling statute with nearly identical language imposed a 6-month statute of limitations on the loser's right to private cause of action to recover the money paid pursuant to the wager); *see also Bartlett v. Slusher*, 215 Ill. 348 (Ill. 1905); *Holland v. Swain*, 94 Ill. 154 (Ill. 1879); *Moench v. Graff*, 212 Ill.App. 42 (Ill. App. 3 Dist. 1918).

The Court takes judicial notice that the United States government shut down the gambling site on April 15, 2011.    *See United States v. Pokerstars, et al.*, 11-CV-2564.    As such, April 15, 2011, was the last conceivable date on which any "losers" could have sustained any gambling losses. The original complaint in this case was filed on July 11, 2012 (almost 15 months after the gambling site was shut down) (Doc. 2-4).    Thus, for plaintiffs' loser claims to be timely, plaintiffs should have brought their claims by October 10, 2011 for the "loser" claims, and they did not.    Thus, their loser claims are also time barred under 720 ILCS 5/28-8(b).

As the Court finds that plaintiffs failed to plead winners and losers sufficiently, that the other sections in the statute do not confer private causes of action, and that their loser claims are barred by the statute of limitations, the Court need not address defendants' remaining arguments.

## Conclusion

Accordingly, the Court **GRANTS** defendants' motions to dismiss (Docs. 165 & 169).  The Court **DISMISSES prejudice** plaintiffs' third amended complaint. Further, the Court **DENIES** as moot the motions for oral argument (Docs. 167 & 172).  Lastly, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 24th day of March, 2015.

Digitally signed
by David R.
Herndon
Date: 2015.03.24
11:11:41 -05'00'

**United States District Court**